IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EIDOS DISPLAY, LLC, EIDOS III, LLC, § § *Plaintiffs*, § § v. § § CHI MEI INNOLUX CORPORATION, CHI § MEI OPTOELECTRONICS USA, INC., § § *Defendants*. § | CIVIL ACTION NO. 6:11-CV-00201-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Reconsideration and to Alter or Amend the Judgment ("the Motion to Amend") filed by Plaintiffs Eidos Display, LLC and Eidos III, LLC (collectively, "Eidos"). (Dkt. No. 909.) Having considered the Motion to Amend, and for the reasons set forth herein, the Court finds the Motion to Amend should be and hereby is **GRANTED**.

I.      **Factual and Procedural Background**

Eidos alleged that Defendants Chi Mei Innolux Corp. and Chi Mei Optoelectronics USA, Inc. (collectively, "Innolux") directly and indirectly infringed U.S. Patent No. 5,879,958 ("the '958 Patent"). "The '958 patent is directed toward manufacturing processes for an electro-optical device, such as a liquid crystal display (LCD)." *Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1361 (Fed. Cir. 2015). Over the course of pretrial proceedings, Eidos limited its infringement allegations to a single claim—Claim 1 of the '958 Patent. Eidos maintained both direct and indirect infringement allegations for that claim.

As part of the pretrial proceedings before Magistrate Judge John Love, pursuant to *Daubert* challenges by Innolux, Judge Love on three separate occasions struck the damages report of Mr. Arthur Cobb, the damages expert for Eidos, with respect to his opinions on damages for indirect

infringement. (Dkt. No. 837 at 1.) Conforming to the substantive guidance issued by Judge Love, Eidos served a supplemental damages report purporting to correct the problems identified by the Court in the previous reports. (*Id.*) However, Judge Love struck that supplemental damages report as a discovery sanction, because the report was "without leave of court," and the case was set for a rapidly-approaching trial date. (*Id.* at 3.) Judge Love did not evaluate whether the updated information included in Mr. Cobb's supplemental damages report was sufficient under *Daubert*. (*See id.*) In view of his damages ruling, Judge Love granted Eidos leave to "present the question of liability of indirect infringement to the jury" but prohibited Eidos from presenting "any evidence of damages for indirect infringement." (Dkt. No. 837 at 2.)[1]

Trial in this case began on June 26, 2017. At the end of the first day of trial, this Court concluded that there was a serious risk of jury confusion in presenting a liability-only case for indirect infringement. (Dkt. No. 845 at 93–95.) Accordingly, the Court instructed Eidos not to present its evidence addressed to indirect infringement at trial, but "left open the issue" to be addressed after trial. (*Id.* at 93:17–19.)

The jury returned a verdict finding the '958 Patent to be valid and directly infringed, and awarded $4.1 million in damages. (Dkt. No. 901.) After the verdict but before the entry of final judgment, the Parties raised and disputed the impact of the Court's oral ruling on the first day of trial. At a January 31, 2018 hearing on post-trial motions, Innolux contended that the Court

---

[1] Judge Love's order that Eidos could put on a liability-only case appears to have been an attempt to account for the possibility that the Federal Circuit may disagree with his decisions to strike Mr. Cobb's report. To the extent the Federal Circuit was inclined to reverse his *Daubert* order, such decision would only require retrial on damages, rather than a full retrial, if liability for indirect infringement had already been put to the jury. Further, if the jury found no liability for indirect infringement, such verdict would moot the appeal of the damages issue. Judge Love's order thus appears to have been calculated towards preserving judicial economy, in view of the Parties' readiness to present evidence on the liability question.

intended to permanently foreclose all potential curative damages amendments, and to eliminate Eidos's indirect infringement claims. (Dkt. No. 900 at 81:18–84:12.) Innolux thus asked the Court to dismiss the indirect infringement claims with prejudice. (*Id.* at 83:24–84:8.) By contrast, Eidos contended that the Court's purpose was to avoid confusion during trial, *not* to foreclose any possible opportunity to present a case on indirect infringement. (*Id.* at 76:20–77:23.) During this hearing, the Court suggested that:

> [T]he effect of my ruling on the eve of trial ***was not to extinguish the inducement claims but to merely not put them before this jury because there was not evidence to support damage*** -- damages but ***yet leave open for a later date that a different expert could survive Daubert***, and there could be a presentation of evidence on inducement at a later date with supporting damages opinions.

(Dkt. No. 909-2 at 85:2–8.) In response to Innolux's suggestion that the Court should dismiss the indirect infringement claims with prejudice, the Court again noted that "the Court's action meant to avoid jury confusion during that trial but did not mean to substantively dispose forever of those asserted inducement claims . . . ." (*Id.* at 85:25–86:3.) At the conclusion of the hearing, the Court did not limit itself to any specific approach, and instead suggested it was looking for the most efficient way to deal with the indirect infringement claims. (*See id.*) The Court took the issue under advisement.

The Court issued its final judgment on March 5, 2018. (Dkt. No. 902.) At the time the Court initially issued its final judgment, Eidos had not presented a damages case, pursuant to Judge Love's order; it had not requested leave to serve an additional supplemental damages report; and the Asserted Patents had expired, so Eidos could not seek prospective relief. (Dkt. No. 901 at 19.) In view of those facts, the Court concluded that Eidos had not demonstrated a "concrete injury" as required for federal jurisdiction under Article III of the U.S. Constitution, and dismissed the

indirect infringement claims without prejudice for lack of standing.[2] (*Id.*) Based on its finding that Eidos lacked standing, the Court issued a final judgment stating that "Plaintiffs' claim for indirect infringement is **DISMISSED** and **DENIED WITHOUT PREJUDICE**." (Dkt. No. 902 at 2.)

Eidos subsequently asked the Court to amend its final judgment, arguing that the Court's dismissal for lack of standing was improper since well-established law provides that a well-pled allegation of patent infringement is sufficient to confer standing. (Dkt. No. 909.) In response, Innolux opposed the Motion to Amend primarily on the basis that the Court was correct to dismiss the case for lack of standing, given Judge Love's prior order striking Eidos's damages report and the apparent lack of any other evidence of damages. (Dkt. No. 911.) Innolux also argued that if the Court were inclined to amend its judgment, then it should be amended to dismiss the indirect infringement claims ***with*** prejudice. (Dkt. No. 911 at 7 n.5.)

As part of its Motion to Amend, Eidos proposed a solution that could obviate the standing issue: the Court could grant Eidos leave to submit an expert damages report. (Dkt. No. 909 at 4.) Granting such leave would enable Eidos to present evidence of damages at trial, which would suffice to demonstrate the requisite "concrete injury" required for Article III standing.

In view of Eidos's arguments, the Court set the Motion to Amend for oral argument. At oral argument, Eidos maintained its suggestion that granting it leave to amend would be the most efficient and fair manner in which to proceed. Innolux did not contest that Eidos would have

---

[2] The Court addressed the issue of standing *sua sponte*, as no Party had briefed or raised the issue of standing prior to the issuance of the Court's final judgment. *See Lemaire Illumination Techs., LLC v. HTC Corp.*, No. 2:18-CV-00021-JRG, 2019 WL 1489065, at *2 (E.D. Tex. Apr. 4, 2019) (explaining that federal courts have an "independent obligation to examine" subject-matter jurisdiction (quoting *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004))). Accordingly, the Motion to Amend and the responses thereto were the first opportunity for the Parties to address the standing issue.

standing to pursue its indirect infringement claims if the Court granted Eidos leave to submit evidence on damages.

Instead, Innolux contended that any prejudice to Eidos is mitigated by Eidos's ability to refile a new suit targeted to indirect infringement. However, Eidos explained that refiling a new suit would be both inefficient and highly prejudicial. Eidos pointed out that filing a new suit could open the door to re-litigation of issues that have already been decided in this case and would impose an artificially limited damages window. In the present suit, "there is no dispute that Eidos can seek damages starting in 2005 (six years before filing the complaint) to 2015, when the patent expired." (Dkt. No. 909 at 4 n.3.) However, in a new suit, Eidos would only be entitled to damages from the time of filing (at the earliest, late 2019) with a statutory lookback period of six years (at the earliest, late 2013). *See* 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."). Since the '958 Patent expired in 2015, Eidos would be artificially stripped of the majority of its damages claim if it was required Eidos to file a new suit. Eidos argues that "this unintended result" would be highly prejudicial and inconsistent with the Court's prior guidance at trial. (Dkt. No. 909 at 4 n.3.)

## II.     Legal Standard

"District courts have 'broad discretion' in 'all discovery matters.'" *Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 2:17-cv-00418-JRG, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) (quoting *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013)); *accord Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014). The Court's broad discretion includes deciding whether and when an expert witness may submit an amendment to a prior report. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00651-JRG, 2019 WL

2267212, at *3 (E.D. Tex. May 28, 2019) (citing Fed. R. Civ. P. 26(a)(2)(D); *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 294–95, 296–97 (5th Cir. 2016)).

District courts have an ongoing duty to examine the basis for subject-matter jurisdiction in any action. *Sawyer v. Wright*, 471 F. App'x 260, 261 (5th Cir. 2012); *Lebouef v. Island Operating Co.*, 342 F. App'x 983, 984 (5th Cir. 2009) ("[T]he federal courts are under a continuing duty to inquire into the basis of jurisdiction in the district court.") (citing *Warren v. United States*, 874 F.2d 280, 281–82 (5th Cir. 1989)). Further, district courts must raise the issue of subject-matter jurisdiction even if the issue is not raised by a party. *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 402–03 (5th Cir. 2013) ("[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte."). Article III requires a party to demonstrate a "concrete injury" in order to fall within the subject-matter jurisdiction of the federal courts. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

However, courts should generally not pass on "constitutional questions . . . unless such adjudication is unavoidable" since it is "'important to avoid the premature adjudication of constitutional questions.'" *Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017) (quoting *Clinton v. Jones,* 520 U.S. 681, 690 (1997); *Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 105 (1944)) (cleaned up). Thus, where a court can appropriately resolve a dispute between parties without addressing a lurking constitutional question, it should generally attempt to do so. *See Bond v. United States*, 572 U.S. 844, 855 (2014) (explaining that courts should "not decide a constitutional question if there is some other ground upon which to dispose of the case"); *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed. Cir. 1995) ("[C]ourts should not, unless compelled, decide constitutional questions." (quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1126 (Fed. Cir. 1985))).

### III.    Discussion

The Court is persuaded to exercise its discretion to grant Eidos leave to amend its damages report for indirect infringement. The standing issue involves adjudication of multiple complex "constitutional questions," including whether Eidos has a concrete injury, whether the standing analysis is changed by the fact the *Court* had prohibited Eidos from proving up its injury, and whether Eidos had admissible evidence of the ***fact*** of damages (i.e., infringement of Eidos's right to exclude) as distinguished from the ***quantity*** of damages (i.e., Eidos is entitled to a certain sum of money). *See WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264–65 (Fed. Cir. 2010) ("[A] party holding one or more of those exclusionary rights [conferred by 35 U.S.C. § 271(a)] . . . suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue.").

These questions, in turn, impact whether the Court should dismiss Eidos's claims with or without prejudice, which remains a live dispute among the Parties. *See Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1360–61 (Fed. Cir. 2008). "Subject matter jurisdiction does not fail simply because the plaintiff might be unable to ultimately succeed on the merits. . . . To the contrary, '[i]t is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.' . . . Thus, a failure to prove the allegations alleged in a complaint requires a decision on the merits, not a dismissal for lack of subject matter jurisdiction." *Id.*

At the time the Court entered its final judgment in this case, Eidos had not expressly requested leave to submit a supplemental expert report on damages. Absent such a request, the Court felt "compelled" to "decide [the] constitutional questions" of standing that were apparent from the record. *See Transmatic*, 53 F.3d at 1279. While the Court remains prepared to dispose of

these constitutional questions if "such adjudication is unavoidable," Eidos's subsequent request to submit a supplemental damages report furnishes "some other ground upon which to dispose" of the dispute before the Court. *Tam*, 137 S. Ct. at 1755; *Bond*, 572 U.S. at 855. In view of Eidos's request, and the unfair prejudice that would result from requiring Eidos to refile its indirect infringement claims, the Court is persuaded to avoid the constitutional questions by exercising its "broad discretion" over the structure and timing of expert discovery to permit Eidos to submit a supplemental expert report. *See Blitzsafe*, 2019 WL 2210686, at *3 (quoting *Moore*, 735 F.3d at 315).

### IV.   Conclusion

The Court hereby **GRANTS** Eidos's Motion to Amend (Dkt. No. 909), and **SEVERS** the indirect infringement claims maintained by Eidos against Innolux. Accordingly, the Court **ORDERS** that the Clerk shall open a new case number into which Eidos's indirect infringement claims shall be severed and placed. That new case number shall be consolidated with this case such that Case No. 6:11-cv-201 shall be the Lead Case, and the new case shall be a Member Case. This Order does not impact any other matters presently pending in this case, including Innolux's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 908), which shall remain active under this case. Consistent with this Order, the Court issues an Amended Final Judgment, filed contemporaneously herewith.

Additionally, the Court **ORDERS** that Eidos may submit a supplemental report on damages for indirect infringement. The Court **ORDERS** the Parties to jointly propose an amended Docket Control Order ("DCO"), which should include the following deadlines: (1) Eidos to submit an amended expert damages report; (2) Innolux to submit a responsive supplemental expert

damages report; [3] (3) depositions related to said damages reports; (4) *Daubert* briefing related to said damages reports; and (5) any other deadlines which the Parties propose that the Court should set. To the extent the Parties do not agree, their competing proposals shall be alternatively set forth in the jointly filed DCO. The Parties shall file such DCO within seven calendar days of the filing of this Order.

The Court hereby **SETS** these severed indirect infringement claims as maintained by Eidos for jury trial on **February 10, 2020**. The scheduling deadlines proposed by the Parties should account for this trial date.

**So ORDERED and SIGNED this 22nd day of October, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[3] The Court grants Innolux broad leave to update its damages analysis to the extent such update is responsive to Eidos's amended damages report.